AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
### for the
Southern District of California

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) |
| | ) Case No.    20MJ5485 |
| Black i-phone | ) |
| Seizure No. 2021250400080501-0007 | ) |
| ("Target Device 1") | ) |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
See Attachment A-1, incorporated herein by reference.

located in the _____ Southern _____ District of _____ California _____ , there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC Sec. 952 and 960 | Importation of a Controlled Substance |
| 21 USC Sec. 963 | Conspiracy to Import |

The application is based on these facts:
See Attached Affidavit, incorporated herein by reference.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Melissa Votteler, HSI Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ telephone _____ *(specify reliable electronic means).*

Date: ____ December 21, 2020

*Judge's signature*

City and state:  San Diego, California
Hon. Michael S. Berg, United States Magistrate Judge
*Printed name and title*

## ATTACHMENT A-1
### PROPERTY TO BE SEARCHED

The following property is to be searched:

> Black i-phone
> 356789113657315
> Seizure No. 2021250400080501- 007
> ("Target Device 1")

The Target Device is currently in the possession of Homeland Security Investigations, located at 880 Front Street, San Diego, CA 92101.

## ATTACHMENT B
ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A-1 and A-2 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below.  The seizure and search of the cellular telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of November 20, 2020 , up to and including December 20, 2020:

    a.    tending to indicate efforts to import controlled substances from Mexico into the United States;

    b.    tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of controlled substances from Mexico into the United States;

    c.    tending to identify co-conspirators, criminal associates, or others involved in importation of methamphetamine or heroin, or some other federally controlled substance, from Mexico into the United States;

    d.    tending to identify travel to or presence at locations involved in the importation controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;

    e.    tending to identify the user of, or persons with control over or access to, the Target Device; and/or

    f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 21, United States Code, Sections 952, 960 and 963.

**AFFIDAVIT**

I, Special Agent Melissa Votteler, being duly sworn, hereby state as follows:

**INTRODUCTION**

1. I submit this affidavit in support of an application for a warrant to search the following electronic devices:

> Black i-phone
>
> Seized as FP&F No. 2021250400080501-007
>
> 365789113657315
>
> ("Target Device 1")

> Blue i-phone
>
> Seized as FP&F No. 2021250400080502-001
>
> 353984107209650
>
> (Target Device 2")

as further described in Attachment A-1, A-2 and to seize evidence of crimes, specifically violations of Title 21, United States Code, Sections 952, 960 and 963 as further described in Attachment B. The requested warrant relates to the investigation and prosecution of Giovannie Gaytan ROSALES and Ivon BADILLO ("Defendants") for importing approximately 12.12 kilograms (26.72 pounds) of Methamphetamine and 1.16 kilograms (2.56 pounds) of Heroin from Mexico into the United States. The Target Device is currently in the custody of Homeland Security Investigations located at 880 Front Street, San Diego, CA 92101.

2. The information contained in this affidavit is based upon my training, experience, investigation, and consultation with other members of law enforcement. Because this affidavit is made for the limited purpose of obtaining a search warrant for the Target Device, it does not contain all the information known by me or other agents regarding this investigation. All dates and times described are approximate.

**BACKGROUND**

3.     I have been employed as a Special Agent with Homeland Security Investigations (HSI) since 2018. I am currently assigned to the HSI Office of the Special Agent in Charge, in San Diego, California. I am a graduate of the Federal Law Enforcement Training Center in Glynco, Georgia.

4.     During my tenure with HSI, I have participated in the investigation of various narcotics trafficking organizations involved in the importation and distribution of controlled substances into and through the Southern District of California. Through my training, experience, and conversations with other law enforcement officers experienced in narcotics trafficking investigations, I have gained a working knowledge of the operational habits of narcotics traffickers, in particular those who attempt to import narcotics into the United States from Mexico at Ports of Entry.

5.     I am aware that it is common practice for narcotics traffickers to work in concert utilizing cellular telephones. A common tactic utilized by narcotics traffickers is to smuggle controlled substances into the United States from Mexico by concealing the controlled substances in vehicles that enter the United States at Ports of Entry such as the San Ysidro Port of Entry and the Otay Mesa Port of Entry. With respect to the importation of narcotics in this manner, I am aware that narcotics traffickers in Mexico frequently communicate with the individual ("the driver") responsible for driving the vehicle containing the concealed narcotics into the United States. These communications can occur before, during and after the narcotics are imported into the United States. For example, prior to the importation, narcotics traffickers frequently communicate with the driver regarding arrangements and preparation for the narcotics importation. When the importation is underway, narcotics traffickers frequently communicate with the driver to remotely monitor the progress of the narcotics, provide instructions to the driver and warn accomplices about law enforcement activity. When the narcotics have been imported into the United States, narcotics traffickers may communicate with the driver to provide further instructions regarding the transportation of the narcotics to a destination within the United

States.

6.     Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I am aware that cellular telephones (including their SIM card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones of individuals involved in the importation of narcotics may yield evidence:

a.     tending to indicate efforts to import controlled substances from Mexico into the United States;

b.     tending to identify accounts, facilities, storage devices, and/or services—such as email addresses, IP addresses, and phone numbers—used to facilitate the importation of controlled substances from Mexico into the United States;

c.     tending to identify co-conspirators, criminal associates, or others involved in importation of controlled substances from Mexico into the United States;

d.     tending to identify travel to or presence at locations involved in the importation of controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;

e.     tending to identify the user of, or persons with control over or access to, the Target Device; and/or

f.     tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

**FACTS SUPPORTING PROBABLE CAUSE**

7.     On December 20, 2020 at about 02:22 A.M. Giovannie Gayton ROSALES

3

1   and Ivon BADILLO, two Unites States citizens attempted to enter the United States at the
2   San Ysidro, California, Port of Entry via vehicle lane 21.  ROSALES was the driver and
3   registered owner of a white Chrysler 200 bearing a California license plate.

4        A Customs and Border Protection Officer (CBPO) was assigned to work pre-
5   primary operations and made contact with ROSALES and BADILLO. The CBPO
6   received two negative Customs declarations.  The CBO conducted an inspection of the
7   vehicle and noticed a strong odor of gasoline coming from the vehicle. This CBPO also
8   noticed the back seat was loose, which he stated was unusual for newer vehicles like this
9   one.

10        The Chrysler 200 was then referred to secondary for further inspection. During a
11   Non-Intrusive Inspection (NII) of the vehicle, the Z-Portal operator identified an anomaly
12   in the gas tank and advised the pre-primary CBPO to check the vehicle's gas tank. This
13   CBPO noticed the gas tank tapped solid and that tool markings were located on the fuel
14   tank locking ring. A fiber optic scope was used to observe the contents of the gas tank.
15   After pulling out the fuel tank sending unit, the CBPO discovered vacuum sealed packages
16   inside the gas tank.

17        A total of 27 packages were removed from the gas tank. CBP then separated these
18   packages into two groups, 25 vacuum sealed packages which were observed to contain
19   methamphetamine and two packages which were observed to contain heroin. The
20   methamphetamine packages weighed 12.12 kilograms (26.72 pounds). The heroin
21   packages contained 1.16 kilograms (2.56 pounds).

22        One of the 25 packages was field tested and results indicated a positive indication
23   for the properties of methamphetamine. One of the two packages was field tested and
24   results indicated a positive indication for properties of heroin.

25        BADILLO post-arrest denied knowledge of a drug presence in the vehicle.
26   BADILLO's statements were contradictory during her interview. When asked by Special
27   Agents if she knew why she was being detained, she stated no. Near the end of the
28   interview, BADILLO stated that she believed she was being detained for drugs in the

1 | vehicle because CBP had made this statement. BADILLO stated that the Mexican police
2 | had bribed her for illegally parking at a gas station prior to attempting to enter back into
3 | the United States. She stated she entered Mexico with $1,000.00 USD that day and paid
4 | $500.00 USD to the Mexican police in order to leave the gas station. BADILLO has a one-
5 | year old child and is unemployed. ROSALES has been unemployed since approximately
6 | February 2020. BADILLO originally claimed she entered Mexico on December 20, 2020
7 | with only ROSALES then later stated she entered with ROSALES and another individual
8 | whom she did not know his name. BADILLO stated she did not know any of the names
9 | of ROSALES' family members who she claimed she spent the day and night with. She
10 | claims she did not know where the family members house was or where they ate and
11 | shopped at on December 20, 2020.

12 | ROSALES and BADILLO were arrested and charged with violations of Title 21
13 | USC 952, 960, Unlawful Importation of a Controlled Substance.

14 | 8. The two Target Devices were seized at the time of arrest. During the
15 | interview, ROSALES was shown the Target Devices and identified "Target Device 1" as
16 | belonging to him. During BADILLO's interview, she was shown the target devices and
17 | identified "Target Device 2" as belonging to her.
18 | 9. Based upon my experience and training, consultation with other law
19 | enforcement officers experienced in narcotics trafficking investigations, and all the facts
20 | and opinions set forth in this affidavit, I believe that telephone numbers, contact names,
21 | electronic mail (email) addresses, appointment dates, messages, pictures and other digital
22 | information are stored in the memory of the Target Device. In light of the above facts and
23 | my experience and training, there is probable cause to believe that Defendant was using
24 | the Target Device to communicate with others to further the importation of illicit narcotics
25 | into the United States. Further, in my training and experience, narcotics traffickers may be
26 | involved in the planning and coordination of a drug smuggling event in the days and weeks
27 | prior to an event. Co-conspirators are also often unaware of a defendant's arrest and will
28 | continue to attempt to communicate with a defendant after their arrest to determine the

whereabouts of the narcotics. Based on my training and experience, it is also not unusual for individuals, such as Defendant, to attempt to minimize the amount of time they were involved in their smuggling activities, and for the individuals to be involved for weeks and months longer than they claim. Accordingly, I request permission to search the Target Device for data beginning on November 20, 2020 up to and including December 21, 2020.

**METHODOLOGY**

10.    It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

11.    Following the issuance of this warrant, I will collect the Target Device and subject it to analysis. All forensic analysis of the data contained within the telephone and

1    its memory cards will employ search protocols directed exclusively to the identification
2    and extraction of data within the scope of this warrant.

3        12.    Based on the foregoing, identifying and extracting data subject to seizure
4    pursuant to this warrant may require a range of data analysis techniques, including manual
5    review, and, consequently, may take weeks or months. The personnel conducting the
6    identification and extraction of data will complete the analysis within ninety (90) days of
7    the date the warrant is signed, absent further application to this court.

8    **PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE**

9        13.    Law enforcement has not previously attempted to obtain the evidence sought
10   by this warrant.

11   **CONCLUSION**

12       14.    Based on the facts and information set forth above, I submit there is probable
13   cause to believe that a search of the Target Devices will yield evidence of Defendant's
14   violations of Title 21, United States Code, Sections 952, 960 and 963. Accordingly, I
15   request that the Court issue a warrant authorizing law enforcement to search the item
16   described in Attachment A-1 and A-2 and seize the items listed in Attachment B using the
17   above-described methodology.

18

19   I swear the foregoing is true and correct to the best of my knowledge and belief.

20

21

22   Special Agent Melissa Votteler
     Homeland Security Investigations

23

24   Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1
25   by telephone on this _21st_ day of _December_, 2020.

26

27

28   Honorable Michael S. Berg
     United States Magistrate Judg

7